# McCreery *v.* National Surety Company, Appellant.

*Principal and surety—Building contract—Architect—Certificate of default—Notice to surety.*

Where a building contract denies all interference by the owner with the work, except as he is furnished with a certificate from the architect that there had been default on the part of the builder, the surety of the builder cannot be relieved of his liability on his bond of which the building contract was made a part, by reason of the failure of the owner to notify the surety of the builder's default as required by the bond, where it appears that the owner never received from the architect any certificate of default.

Argued Oct. 26, 1909. Appeal, No. 102, Oct. T., 1909, by defendant, from judgment of C. P. No. 4, Allegheny Co., Fourth Term, 1907, No. 378, on verdict for plaintiff in case of J. Rodgers McCreery v. National Surety Company. Before FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Assumpsit on a bond of suretyship. Before COHEN, J.

From the record it appeared that the bond was given as surety for the performance of a building contract, the material portion of which was as follows:

"Article V. Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or

of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the architects, or either of them, the owner shall be at liberty, after three days' written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract; and if the architects, or either of them, shall certify that such refusal, neglect or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for said work and to enter upon the premises and take possession, for the purpose of completing the work included under this contract, of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work such expense shall be paid by the owner to the contractor, but if such expense shall exceed such unpaid balance the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architects, or either of them, whose certificate thereof shall be conclusive upon the parties.

"Article VI. The contractor shall complete the whole of the work comprehended in this agreement on or before the 15th day of March, 1907. In event that said dwelling is not completed and ready for occupancy on said date the contractor shall forfeit and pay to the owner, as liquidated damages, the sum of ten dollars for each day's delay thereafter for twenty days, and for each additional day thereafter the sum of five dollars.

"In case of default of the owner, of the architects, or of any other contractor employed by the owner upon the work, or by any damage caused by fire or other casualty for which the contractor is not responsible, or by general strikes or lockouts caused by acts of employees, then the time therein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all causes aforesaid, which extended period shall be determined and fixed by the architects, or either of them, but no such allowance shall be made unless a claim therefor is presented in writing to the architects within forty-eight hours of the occurrence of such delay."

The bond contained the following provision:

"3. If said principal shall in any manner default in the performance of any matter or thing in said contract specified to be by said principal performed, or in the event of said principal abandoning the work provided by said contract to be done by said principal, the obligee shall immediately so notify the company, and thereafter the company shall have the right at its option to assume and sub-let said contract and to proceed thereunder as if no default or abandonment had occurred; and if the company elect to assume said contract, all moneys agreed therein to be paid said principal and which at the time of the default be due the principal shall thereupon become payable to the company, and shall be paid to it, anything to the contrary in said contract notwithstanding."

The surety claimed that it had not been notified by the owner of the default of the contractor. There was no evidence that the owner had ever received any certificate of default from the architects.

Verdict and judgment for plaintiff for $2,091.54. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*W. K. Jennings*, with him *D. C. Jennings*, for appellant.— The surety was discharged: National Surety Co. v. Long, 125

Fed. Repr. 887; Streeter v. Streeter, 43 Ill. 155; Moore v. Paine, 12 Wend. 123; Bauschard Co. v. Fidelity & Casualty Co. of New York, 21 Pa. Superior Ct. 374.

*Joseph Stadtfeld*, with him *W. B. Rodgers*, for appellee.— The fact that the contractor was unable to complete the building on March 15 effected no breach of the contract. So long as the work was prosecuted with reasonable diligence he was not in default.

Time was not of the essence of the contract: Hunn v. Penna. Institution, 221 Pa. 403; Folsom v. McDonough, 60 Mass. 208; Farnham v. Ross, 2 Hall (N. Y.), 187.

The failure to complete on March 15 was not a default within the meaning of the provision in the bond: In re Young, 31 L. R. Ch. Div. 168; Van Buren County v. American Surety Co., 137 Iowa, 490; Fink v. Farmers' Bank, 178 Pa. 154; Alexandria Water Co. v. Surety Co., 225 Pa. 1.

OPINION BY MR. JUSTICE STEWART, January 3, 1910:

This case was properly ruled. The contract between owner and builder was made part of the contract of suretyship on which the present action was based; and it is only by reference to the former that we can know what was in contemplation of the parties to the latter, when they stipulated that in case the builder should in any manner default in the performance of any manner or thing specified in his contract to be performed, the owner should immediately notify the surety. Under the building contract it was solely for the architects to determine whether default of any kind had been committed. That contract denied all interference by the owner, except as he was furnished with a certificate from the architect that there had been default on the part of the builder. It was not for the owner to decide whether there had been failure to perform even in the matter of time. Contingencies were specified upon the happening of which the time for the completion could be extended by the architects; and possible failure to complete within the time specified through want of diligence on the part of the builder was contemplated as well; this, however, was to

be at the expense of the builder, at a per diem rate. Failure, for any such reason as the latter, to complete within the time specified, was not made a breach which the owner could assert by any interference whatever with the builder. If the owner could not interfere, certainly the surety could not. The contract provided that in case the builder failed "in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the architects, or either of them, the owners should be at liberty after three days' written notice to the contractor, to provide any such labor or material and deduct," etc. However much the owner might have complained that the work was not being pushed with diligence, he could not be heard to say that it was failure on the part of the builder, even though it clearly indicated a certain failure to complete by the appointed time, except as he had a certificate to that effect from the architect. And so when the appointed time was past, had there been no provision in the contract with respect to further delay, the owner could not have asserted a default without such certificate. The builder in such case could have stood on his rights and remained in absolute control until the certificate had been obtained. The surety must be held to have known that the contract left it with the architects alone to decide by their certificates what was default; and that when it stipulated that the obligee should give notice of any default, the stipulation had regard to such failure only as the architects by their certificate would declare to be default. This view of the case makes discussion as to the sufficiency of the notice given to the appellant, unnecessary. The assignment is overruled and the judgment is affirmed.